```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 1 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TIMOTHY D. REASE,

                Plaintiff,

    -against-                        OPINION AND ORDER

THE PRUDENTIAL INSURANCE       13 Civ. 5342 (GBD) (JLC)
COMPANY OF AMERICA, et al.,

                Defendants.
------------------------------------- x
GEORGE B. DANIELS, United States District Judge:

Before the Court are cross-motions for summary judgment filed by Plaintiff Timothy Rease ("Plaintiff" or "Rease") and Defendant Prudential Insurance Company of America ("Prudential"). Plaintiff commenced this action against Prudential under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(b), challenging Prudential's decision to terminate his long-term disability benefits. Prudential found that Plaintiff no longer suffers from a "total disability" as defined under his employee benefits plan that would entitle him to continue receiving benefits.

Prudential's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED.

## I. Background[1]

### a. *Plaintiff's Long-Term Disability Plan*

From 1997 to 2000, Plaintiff was an employee at KPMG LLP ("KPMG"), a well-known international consulting firm with 10,000 employees and over 2,500 clients in both the public and

---

[1] The following facts are taken from Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1 Stmt."), Plaintiff's Counter Local Rule 56.1 Statement of Facts ("Pl. Counter Stmt."), Prudential's Local Rule 56.1 Statement ("Def. 56.1 Stmt."), Prudential's Counter Local Rule 56.1 Statement of Facts ("Def. Counter Stmt."), and the administrative record (cited as "REASE" followed by five-digit number). The following facts are not in dispute unless otherwise indicated.

1

private sectors. During his tenure at KPMG, Plaintiff was a Senior Manager in KPMG's Management Consulting Division. As a Senior Manager, Plaintiff was required to sell and lead consulting projects for BellSouth's eBusiness Centers. An employee of KPMG's Human Resources staff describes the implementation of these consulting projects as "accelerated, stressful, and demanding." (Pl. 56.1 Stmt. ¶ 19; REASE 00932.) Plaintiff was also expected to function at a high level of performance in a "very fast-paced and dynamic environment" where there was "no margin for error in the implementation of [the] consulting projects . . . ." (Pl. 56.1 Stmt. ¶ 19; REASE 00932; see also REASE 01724.)

Through his employment with KPMG, Plaintiff participated in an employee benefit plan (the "Plan"). Prudential insures and administers claims for benefits under the Plan. The Plan provides long-term disability benefits to participants who suffer from a "Total Disability." (See REASE 0617.) A "Total Disability" exists when Prudential determines that the following conditions are met:

> (1) Due to Sickness or accidental injury, you are not able to perform, for wage or profit, the material and substantial duties of your occupation.
> (2) You are not working at any job for wage or profit.
> (3) You are under the regular care of a Doctor.

(Id.) The Plan also offers partial disability benefits, which require the same conditions of having a "Total Disability" except for the second condition that the participant is not working at any job for wage or profit. (Id.) Instead, the condition is that "[y]ou are working . . . (a) at your own occupation, but you are not able to perform your duties on a full-time basis; or (b) at another occupation" and those earnings are not more than 80% of your pre-disability earnings. (Id.)

2

### b. *Plaintiff's Long-Term Benefits in 2000*

In June 2000, Plaintiff was diagnosed with the ███████████████████████████.
Plaintiff took personal leave that same month upon the recommendation of his treating physician. On December 25, 2000, Prudential approved Plaintiff to receive long-term disability benefits.

However, in 2001, Prudential determined that Plaintiff's entitlement to benefits was subject to the Plan's exclusionary rule, which limits a participant's benefits to twenty-four months for disabilities caused by a mental illness. Prudential conceded that Plaintiff had a disability but found his disability instead to be the result of a mental disorder. As a result, Prudential subsequently decided to terminate Plaintiff's benefits. Plaintiff challenged Prudential's decision in the United States District Court for the Northern District of Georgia, Rease v. KPMG LLP and Prudential Insurance Company of America, No. 1:02-CV-797-ODE (N.D. Ga. Sep. 26, 2003), and prevailed. The court held that Plaintiff's disability was physical rather than mental in nature and thus not limited to the twenty-four months pursuant to the Plan's mental illness exclusion. See Rease, No. 1:02-CV-797-ODE, at 15–16; REASE 2115. As a result, Plaintiff's disability benefits were reinstated.

### c. *Plaintiff's 2007 Medical Evaluations - Drs. Justin McArthur and Ned Sacktor*

In 2007, Plaintiff was examined by Drs. Justin McArthur, a neurologist from Johns Hopkins Hospital, and Ned Sacktor, one of Plaintiff's treating physicians since his diagnosis in 2001. Dr. McArthur evaluated Plaintiff's medical evidence provided to him by Dr. Sacktor, and concluded that Plaintiff was "still disabled and not able to perform his previous job as a Senior Manager." (REASE 01345.)

In a letter dated September 4, 2007, Dr. Sacktor concurred with Dr. McArthur's medical conclusion, stating:

> [B]ased upon the clinical evaluations including neuropsychological testing performed in January . . . 2007, Mr. Tim Rease has a

3

> diagnosis of ▇▇▇▇▇▇ cognitive-motor disorder, and is disabled from this condition. In my opinion, he would not be able to perform his previous job as a Senior Manager at KPMG. It is unlikely that these deficits will improve enough to allow Mr[.] Rease to return to his previous job responsibilities.

(Id. at 01343.)

In 2007, Prudential did not terminate Plaintiff's benefits. (Pl. 56.1 Stmt. 68.)

### d. *Plaintiff's 2010 Medical Evaluations*

In 2010, Prudential requested that Plaintiff undergo medical examinations by Prudential's independent physicians to assess his current medical status. Pursuant to the Plan, Plaintiff must furnish proof that his total disability exists in order to continue receiving benefits or submit to a medical exam by Prudential-named doctors. (See id. at 00029.) Plaintiff agreed to be examined by Drs. Wilfred van Gorp, a professor of clinical psychology, and Dennis Miller, an infectious specialist.

#### i. Dr. van Gorp's Medical Report

On June 23, 2010, Dr. van Gorp performed a neuropsychological evaluation of Plaintiff to determine whether Plaintiff has the cognitive ability to return to his previous occupation as a Senior Manager. Dr. van Gorp considered Plaintiff's background information, medical history, psychiatric history, psychosocial history, and behavioral observations. (See id. at 01071–73.) Dr. van Gorp also administered a battery of tests to assess Plaintiff's intellectual functioning, attention and concentration, motor skills, language and verbal skills, visuospatial functioning, learning and memory, executive function, and emotional function. (Id. at 01074–76.) Based on the evaluation, Dr. van Gorp concluded that Plaintiff's examination revealed "normal performance across a variety of domains, including solid intelligence (Superior range), attention, language, psychomotor speed, and executive functioning." Dr. van Gorp noted that the evaluation revealed "[a]n area of relative weakness . . . in memory." (Id. at 01076.) In sum, Dr. van Gorp stated in relevant part:

4

> Though the examination is not entirely normal, it is for the most part normal with the two areas of relative mild weakness . . . .
>
> . . . From a neuropsychological standpoint, he is doing very well overall, but his Average memory in a couple of areas will pose somewhat of a challenge to him should he return to work but would not be expected to result, itself, in an inability to return to work.
>
> . . . I suspect the greatest barrier to Mr. Rease returning to work would be the adjustment associated with a change to see himself as an able, versus disabled, individual. This, of course, is not a small matter.
>
> The good news for Mr. Rease is that, at this time, he does not evidence an ▮▮▮▮ dementia; to the contrary, he has strong abilities in most cognitive domains and except for mild motor and memory weaknesses, he has a normal neuropsychological examination.

(Id. at 01077.) The medical report also included questions to the examining physician about Plaintiff's evaluation results. Dr. van Gorp's written response to the question whether Plaintiff has a cognitive impairment was the following: "Relative weaknesses (but not in the 'impaired range') on two memory indices and one motor test. Otherwise, normal neuropsychological functioning." (Id.)

### ii. Dr. Miller's Medical Report

On June 22, 2010, Dr. Miller examined Plaintiff to determine if Plaintiff currently suffers from any physical limitations that would prevent him from returning to work as a Senior Manager. Dr. Miller concluded that based on his evaluation, there was no evidence of any major physical restrictions that would prevent Plaintiff from working in his occupation. (See id. at 1090.) Dr. Miller stated, "The general neuropsychiatric examination was normal. There were not functional impairments noted from a physical perspective . . . ." (Id.)

### e. *Prudential's Termination of Plaintiff's Benefits in 2010*

On October 28, 2010, Prudential sent Plaintiff a letter informing him that, based on the medical evaluations of Dr. McArthur and Dr. Sacktor, Plaintiff's own physicians, and Dr. van

5

Gorp and Dr. Miller, Prudential's named physicians, Prudential found that he did not suffer from a "Total Disability" that would entitle him to continue receiving long-term benefits under the Plan. (See id. at 02186–90.) Prudential concluded that the physicians' evaluations showed that Plaintiff "has the cognitive and physical capacity to perform the duties of his regular occupation." (Id. at 02189.) Prudential acknowledged that Plaintiff's medical evaluations revealed mild motor and memory weaknesses. (Id.) Prudential stated, however, that "these [weaknesses] would not prevent him from performing the duties of his occupation as a Senior Manager." (Id.)

Prudential also informed Plaintiff of his right to appeal the decision and to submit any additional evidence to support his claim. Plaintiff subsequently appealed the decision in April 2011.

### i. Plaintiff's First Appeal

For his first appeal, Prudential submitted Plaintiff's medical records and evaluations to two other independent physicians for peer review. Dr. Robert Denny, a neuropsychologist, reviewed Plaintiff's medical records to determine if there were any functional or cognitive deficits, and Dr. John Brusch reviewed Plaintiff's medical records to determine any physical limitations.

After conducting a review of Plaintiff's medical history since 2001, Dr. Denney determined that "reliable cognitive test results prior to November 2010 have fallen within the normal range." (Id. at 0555.) When asked in the report the following:

> [P]lease indicate if Mr. Rease's psychological or cognitive symptoms restrict or limit his ability to work in a fast paced environment, exercise good judgment, a quick decision[], perform complex mental tasks, communicate effectively, concentrate, direct others, work independently, acquire new knowledge or skills in a specialty area, or work on a full-time basis. If so, please note the duration of any applicable restrictions/limitations and point to the specific documentation in support of your opinion.

(Id. at 0556.)

Dr. Denney answered,

> In my opinion, Mr. Rease does not have clinically significant restrictions/limitations in this regard.

(Id.)

Dr. Brusch conducted a review of Plaintiff's medical records and concluded that "[t]here [was] no clinical evidence supporting his reports of insomnia and joint pains, decreased memory and forgetfulness, as well as decreased coordination and halting speech." (REASE 00735.) Dr. Brusch also determined that Plaintiff did not possess any medical condition that restricted Plaintiff's ability to "sit, stand, walk, lift, carry, perform upper extremity activities, reach, grip, grasp, pinch or perform repetitive fine motor hand activities or work a full [eight-hour] day." (Id. at 00736.)

On November 15, 2011, Prudential informed Plaintiff that it would uphold the initial decision to terminate Plaintiff's long-term disability benefits. (Id. at 02145–59.) Prudential found that the medical information on record did not support that Plaintiff had an impairment that "would prevent [him] from performing material and substantial duties of his own occupation." (Id. at 02148.) Prudential informed Plaintiff of his right to file a voluntary second appeal of this decision and to submit additional evidence. (Id. at 02159.) Plaintiff was also informed of his option to file a lawsuit. (Id.)

### ii. Plaintiff's Voluntary Second Appeal

In May 2012, Plaintiff filed a voluntary second appeal. This time, Plaintiff submitted records from Drs. Pegah Touradji, a physician at the Division of Rehabilitation Psychology and Neuropsychology at Johns Hopkins University School of Medicine, and P. Portegies, a neurologist. Plaintiff was referred to Dr. Touradji by Dr. Sacktor, Plaintiff's treating physician since 2001. The purpose of the Dr. Touradji's evaluation was to determine Plaintiff's ability to return to his previous occupation or to identify appropriate occupations. (See id. at 00201.)

On June 3, 2011, Dr. Touradji examined Plaintiff's previous medical records and history, and different areas of Plaintiff's cognitive ability; namely, his intellectual functioning, sensory-motor functioning, language-based processing, visuospatial processing, learning and memory, executive skills, cognitive control, auditory attention, reasoning and problem solving, and psychosocial status.[2] (See id. 00201–05.) Dr. Touradji's assessments state in relevant part that "[r]esults of the current evaluation, consistent with his previous evaluation, do not suggest cognitive impairments that would significantly hinder his capacity to work in any occupation." (Id. at 00206). Dr. Touradji also opined that "[t]hough functionally [Plaintiff] is experiencing cognitive impairments relative to his pre-morbid status, neuropsychological test results suggest that even with potential declines in performance, he is functioning within normal cognitive ranges compared to others in his age . . . ." (Id.)

Plaintiff also submitted a report from Dr. Portegies. Dr. Portegies examined Plaintiff, and concluded that Plaintiff's "cognitive functions, after the diagnosis of ▮▮▮▮▮▮▮▮ in 2001, have slowly improved, but [Plaintiff] has not reached his old level." (Id. at 00192.) Dr. Portegies also opined that since Plaintiff's diagnosis of Mild Neurocognitive Disorder ▮▮▮▮▮▮▮▮, Plaintiff has improved. Dr. Portegies noted that there were still some negative mild indications from the neuropsychological evaluation and small fine motor impairments. (Id.)

Prudential requested that Dr. Denney, the independent physician, review Plaintiff's submission from Dr. Touradji and Dr. Portegies. On September 21, 2012, Dr. Denney issued a report, stating that Plaintiff's submissions were consistent in suggesting that Plaintiff does not have a significant neurocognitive compromise. (See id. at 00137–47.)

---

[2] On June 1, 2011, Plaintiff was also examined by Dr. Sacktor. The reason for the visit was a decreased memory evaluation. Dr. Sacktor's ultimate assessment was that Plaintiff did not show "any evidence of progression, now compared to several years ago overall and is now able to perform some work activities at home." (REASE 00194; see id. at 00193–94.)

8

On October 2, 2012, Prudential informed Plaintiff by letter that it had denied his second level appeal, finding that Plaintiff's current medical evaluations confirmed that there was no evidence to support that Plaintiff suffered from any restrictions or limitations. (See id. at 02114– 30.) Because there was no support for any cognitive or physical restriction, Prudential concluded that Plaintiff did not suffer from a total disability that would entitle him to further benefits under the Plan. (Id.)

Plaintiff commenced this lawsuit to appeal that decision.

## II. Legal Standards

### a. *Summary Judgment Under Federal Rule of Civil Procedure 56*

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In deciding a motion for summary judgment, the court must construe the evidence "in the light most favorable to the non-moving party and draw[] all reasonable inferences in [that party's] favor." Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008). "[S]ome alleged factual dispute between the parties will not defeat" a motion for summary judgment. Anderson, 477 U.S. at 248. The factual dispute must be genuine and material. "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248)). A fact is material when it "might affect the outcome of the suit under the governing law." Gayle, 313 F.3d at 682. "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Wein v. Prudential Ins. Co. of Am., No. 03-CV-6526, 2006 WL 2844176, at *7 (S.D.N.Y. Oct. 2, 2006) (citing W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (1990)). "Rather, the

9

opponent can create a genuine issue of material fact only by citing competent, admissible evidence." Wein, 2006 WL 2844176, at *7.

The standard for cross-motions for summary judgment is the same: the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Catholic Health Care Sys. v. Burwell, No. 14-427-cv, 2015 U.S. App. LEXIS 13813, at *18 (2d Cir. Aug. 7, 2015) (quoting Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010)).

### b. *Standard of Review - ERISA*

Under 20 U.S.C. § 1132(a)(1)(B), a party may bring a civil action in federal or state court for a denial of benefits under an employee benefit plan. The parties agreed that the appropriate standard of review of Prudential's decision and the administrative record is de novo. In applying a de novo standard, the court "reviews the administrative record and the plan at issue to determine for itself whether the claimant should be granted or denied the requested relief." See Elsroth v. Consol. Edison Co., 10 F. Supp. 2d 427, 434 (S.D.N.Y. 1988) (citing DeFelice v. Am. Int'l Assurance Co. of N.Y., 112 F.3d 61, 65 (2d Cir. 1997)).

However, this review does not alter the summary judgment standard. See Wein, 2006 WL 2844176, at *14 n.1. The court must be cautious not to weigh evidence to "determine the truth of the matter but to determine whether there is a genuine issue [of fact] for trial." Anderson, 477 U.S. at 249.

### III. There Is Undisputed Evidence in the Record that Plaintiff Has the Ability to Perform His Own Occupation As a Senior Manager

The determinative issue on these cross-motions for summary judgment is whether Plaintiff suffers from a "Total Disability" as defined under the Plan. A "Total Disability" exists if, among other things, Plaintiff has an illness or sickness that prevents him from performing the material and substantial duties of a Senior Manager. (See REASE 00617.) This inquiry requires a focus

10

on the most recent medical evidence and conclusions by the physicians who evaluated and opined on Plaintiff's ability to return to his occupation as a Senior Manager. Based on a review of the administrative record, and drawing all permissible inferences in favor of the moving parties, Prudential's motion for summary judgment must be granted. There is undisputed evidence in the record to show that Plaintiff possesses the cognitive and physical ability to perform the substantial duties and tasks of a Senior Manager.

### a. *Plaintiff Does Not Have Any Cognitive Impairments that Would Prevent Him from Returning to His Occupation As a Senior Manager*

From 2010 to 2011, four physicians examined Plaintiff or reviewed his medical records to assess his cognitive functioning and his ability to return to his occupation as a Senior Manager. All four physicians concluded that Plaintiff does not have any current cognitive impairment that would prevent him from performing his occupation as a Senior Manager. One of those physicians, Dr. van Gorp, performed a neuropsychological evaluation of Plaintiff, and his ultimate conclusion was that Plaintiff had "normal neuropsychological functioning." (Id. at 01077). Although Dr. van Gorp acknowledged Plaintiff's weaknesses in the areas of memory and motor functioning, Dr. van Gorp stated that these areas were not impairments. (Id. at 01077–78.) Specifically, he stated that these areas of weakness "would not be expected to result . . . in an inability to return to work." (Id. at 01077.)

After Dr. van Gorp evaluated Plaintiff, Dr. Denney reviewed Plaintiff's medical evaluation and records, and ultimately concluded that Plaintiff's cognitive testing fell within the normal range. (See id. at 00555.) Next, Dr. Touradji, who was Plaintiff's own physician and not chosen by Prudential, evaluated Plaintiff's cognitive ability. Her conclusion was consistent with that of Dr. van Gorp and Dr. Denney. Dr. Touradji stated that the "[r]esults of the current evaluation . . . [did] not suggest cognitive impairments that would significantly hinder [Plaintiff's] capacity to work in any occupation." (Id. at 00206.) Dr. Touradji also found that although Plaintiff "is experiencing

11

cognitive impairments relative to his pre-morbid status, neuropsychological test results suggest that even with potential declines in performance, <u>he is functioning within a normal cognitive range compared to others in his age</u> . . . ."[3] (<u>Id.</u>)

Additionally, Dr. Portegies examined Plaintiff, and concluded that after Plaintiff's diagnosis of HAND in 2001, Plaintiff's cognitive functions have "slowly improved . . . ." (<u>Id.</u> at 00192.) Although Dr. Portegies noted that Plaintiff has not reached his old level of functioning, the determinative issue on summary judgment is whether Plaintiff has the current ability to perform the material and substantial duties of a Senior Manager; not whether Plaintiff can perform his duties at the same level as before his diagnosis in 2001.[4]

### b. *Plaintiff Does Not Suffer From Any Physical Impairments that Would Prevent Him from Returning to Work As a Senior Manager*

Concerning Plaintiff's physical ability, Drs. Brusch and Miller, both concluded that Plaintiff does not have any physical limitations or restrictions that would prevent Plaintiff from working in his previous occupation. (<u>See id.</u> at 00735.) In 2010, Dr. Miller evaluated Plaintiff, and concluded that there was no physical impairment that prevented him from returning to his previous position. In 2011, in connection with Plaintiff's first appeal, Dr. Brusch reviewed Plaintiff's medical records, and found that Plaintiff did not possess any medical condition that would prevent him from working a full eight-hour day. (<u>Id.</u> at 00735.) Further, Dr. Brusch stated

---

[3] Plaintiff argues that this Court should reject Dr. Touradji's medical conclusion because Dr. Touradji's testing methods do not satisfy the reliability standard for expert testimony as articulated in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993). Plaintiff's argument is misplaced. The <u>Daubert</u> standard does not apply in ERISA cases. <u>See</u> <u>Vanwright v. First Unum Life Ins. Co.</u>, 740 F. Supp. 2d 397, 404 (S.D.N.Y. 2010) ("[Federal Rule of Evidence] 702 and <u>Daubert</u> do not apply in ERISA actions."). Furthermore, this Court having conducted an independent review of Dr. Touradji's report, there is nothing in her report to suggest any flawed method of testing.

[4] Plaintiff also argues that Dr. Sacktor's report from June 1, 2011, contradicts Dr. Touradji's report because Dr. Sacktor stated, "[Plaintiff] does not show any evidence of progression, now compared to several years ago overall and is now able to perform some work activities at home." (REASE 00194.) Dr. Sacktor's statement does not mean that Plaintiff can <u>only</u> do work from home but that Plaintiff could perform some work-related activities at home. Moreover, despite his assessment, Dr. Sacktor referred Plaintiff to Dr. Touradji for an evaluation of his cognitive functioning and to determine whether Plaintiff had the cognitive ability to return to his previous occupation. (<u>Id.</u> at 00201.) Dr. Sacktor did not, therefore, believe his report examined that issue.

that "[t]here is no clinicial evidence supporting his reports of insomnia and joint pains, decreased memory and forgetfulness . . . ." (Id.)

### c. *The Holding in the 2003 Case Is Not Relevant to the Current Issue Before this Court for Review*

Plaintiff's main argument for summary judgment in his favor is the 2003 case that Plaintiff won against Prudential in United States District Court for the Northern District of Georgia. See Rease v. KPMG LLP and Prudential Insurance Company of America, No. 1:02-CV-797-ODE (N.D. Ga. Sep. 26, 2003). In that case, the court held that Plaintiff had a disability that was not caused by a mental illness that would subject Plaintiff's benefits to a twenty-four month limitation. The court held that Plaintiff's illness was, instead, physical in nature.

Plaintiff argues that circumstances have not materially changed since 2003. But Plaintiff cannot provide any physician's report to corroborate this contention. The one medical conclusion consistent across each physician's report from 2010 to 2011 is that Plaintiff has significantly improved in health since 2001. Even Plaintiff recognizes and appreciates this point. The dispute, however, is whether Plaintiff has improved past a certain threshold such that he is now currently able to return to his job as a Senior Manager. Six physicians who have examined Plaintiff from 2010 to 2011 answered that question in the affirmative.

Moreover, the holding from the 2003 case has no bearing on the outcome of this case. Again, the issue in that case was whether Plaintiff's disability was caused by a mental illness. The court did not hold that Plaintiff would always have a "Total Disability" or that he would never be able to return to work.[5]

---

[5] Plaintiff argues that he should be entitled to receive partial disability benefits. However, there is no administrative record or medical evidence before the Court to make such a determination. In addition, Plaintiff's medical reports and evaluations suggest that Plaintiff would not qualify. To qualify for partial benefits, Plaintiff still must prove that he cannot perform the material and substantial duties of his occupation. To the contrary, Plaintiff's medical reports suggest that Plaintiff does not have a cognitive or physical impairment that would prevent him from returning to his occupation as a Senior Manager.

13

## IV. Conclusion

Prudential's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 65, 78, 105, and 109, and to close this case.

Dated: September 3, 2015
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge